**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Clark,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-21-00771-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Cynthia Clark's Application for Disability Insurance Benefits ("DIB") by the Social Security Administration ("SSA") under Title II of the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16), Defendant Social Security Administration Commissioner's Response Brief (Doc. 18), and Plaintiff's Reply Brief (Doc. 19). The Court has reviewed the briefs, Administrative Record (Doc. 14, "R."), and the Administrative Law Judge's ("ALJ") decision (R. at 26-37) and affirms the ALJ's decision for the reasons addressed herein.

**I.    BACKGROUND**

Plaintiff filed an application for DIB on March 25, 2014, for a period of disability beginning on April 1, 2013. (Doc. 16 at 2). Plaintiff's claims were denied initially and upon reconsideration. (*Id.*) Plaintiff testified before an ALJ in a hearing regarding her claims in October 2015 and amended her disability onset date to October 1, 2013. (Doc. 18 at 2). The ALJ denied her claims on January 13, 2017. (*Id.*) On January 16, 2018, the Appeals

Council denied her request for review of the ALJ's decision. (*Id.*) Plaintiff filed an appeal of that decision to this Court and this Court remanded Plaintiff's case to the Commissioner on February 27, 2020. (*Id.*) A second hearing was held before an ALJ on November 3, 2020, which resulted in an unfavorable decision by the ALJ on February 16, 2021. (R. at 960-87). The Appeals Council denied Plaintiff's request for review on March 8, 2021. (R. at 953-59). On May 2, 2021, Plaintiff filed this action seeking judicial review. (Doc. 1).

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The pertinent medical evidence will be discussed in addressing the issues raised by the parties. In short, upon consideration of the medical records and opinions, the ALJ evaluated Plaintiff's alleged disability based upon the severe impairments of avascular necrosis of the bilateral hips, status core decompression of the bilateral hips and left femoral head and bilateral total hip replacement, lumbar degenerative disc disease, and obesity. (R. at 966).

Ultimately, the ALJ assessed the medical evidence and opinions and concluded that Plaintiff was not disabled. (R. at 980). The ALJ found that Plaintiff did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1." (R. at 969). Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 C.F.R § 404.1567(a)" with certain function limitations and concluded that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] could have performed." (R. at 971, 979).

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five–step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

**III.    ANALYSIS**

Plaintiff raises two arguments for the Court's consideration: (1) did the ALJ

properly consider the assessments of treating physicians, Wladislaw Fedoriw, M.D. and David Camarata, M.D.; and (2) whether the ALJ erroneously rejected Plaintiff's symptom testimony. (Doc. 16 at 1). Plaintiff also requests this Court to remand the case for an award of benefits. (Doc. 16 at 24-25).

### A. The ALJ properly evaluated the medical opinion evidence of the treating physicians.

Plaintiff argues that the ALJ improperly rejected the treating medical sources' opinions resulting in legal error. (Doc. 16 at 12-19). The Court finds the ALJ properly weighed the medical opinions.

When evaluating medical opinion evidence in cases filed prior to March 27, 2017, "[t]he ALJ must consider all medical opinion evidence," and there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Although greater weight is generally afforded to treating physicians, a "treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 & n. 7 (9th Cir. 1989). If a treating physician's opinion is not given controlling weight, then the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(d)(2)-(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957. If a treating physician's opinion is contradicted by another doctor's opinion, the ALJ cannot reject the treating physician's opinion unless he provides specific and legitimate reasons that are based on substantial evidence in the record." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Moreover, "an ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as

incredible." *Tommasetti*, 533 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. Dr. Wladislaw Fedoriw, M.D.

This treating physician submitted a check-box medical source statement regarding Plaintiff's impairments. (R. at 492-94). As set out in the ALJ's discussion, the doctor opined that Plaintiff was limited to standing/walking and sitting for no more than two hours in an eight-hour workday; would need to shift positions at will; could lift less than ten pounds rarely; could rarely stoop, never twist, crouch/squat, or climb ladders or stairs; was incapable of holding low stress jobs and would be absent from work more than four days per month. (R. at 976, 492-94). The doctor also found that Plaintiff had no issues using her bilateral upper extremities for grasping, turning, twisting and fine manipulation of objects, but believed Plaintiff was incapable of reaching more than 66 percent of a regular workday. (*Id*.) This doctor specifically concluded that Plaintiff did not require an assistive device for walking or standing. (R. at 492).

The ALJ assigned limited weight to this opinion. (*Id*.) The ALJ found that the doctor's conclusion that Plaintiff was unable to sit for more than two hours in an eight-hour workday or that Plaintiff had difficulty using her upper extremities was unsupported and inconsistent with the medical record. (*Id*.) The ALJ also pointed out that the medical conclusions proffered by Dr. Fedoriw were inconsistent with his own medical treatment notes and observations. (*Id*.) The ALJ then set forth multiple examples from the medical record reflecting the physician's notes that Plaintiff had normal range of motion, reflexes, and dexterity, showcased a mild, occasional limp, and expressed subjective pain in the hips that improved with hip replacements in June 2015 and January 2017. (*Id*.) Plaintiff takes issue with the ALJ finding fault with Dr. Fedoriw's opinion that Plaintiff could not reach more than 66 percent in a workday. (Doc. 16 at 13). Additionally, Plaintiff argues that the ALJ's finding that Dr. Fedoriw's assessment was inconsistent with the records is incorrect

because not all of a doctor's personal observations need to appear in their medical records to be valid. (Doc. 16 at 14). Finally, Plaintiff contends that the lack of an assistive device should not invalidate the doctor's limitation assessments. (*Id.*)

The ALJ did not err in rejecting Dr. Fedoriw's opinion finding it inconsistent with the medical evidence. While the medical records demonstrate the existence of Plaintiff's physical impairments, the ALJ found the records are inconsistent with the severe limitations opined by Dr. Fedoriw. Plaintiff's argument that not all observations by medical personnel are included in the records is unpersuasive and goes against the very idea of keeping a record, especially in the case of a medical professional's observations and examination findings. With the vast amount of patients doctors have under their care at any one time, they are well aware of the importance to keep accurate records when examining their patients. The notion that a doctor does not include all of their personal observations from an examination, especially with a patient that has been under a certain doctor's care for years, is farcical. The more logical explanation is that the doctor simply did not observe a particular ailment upon examination if there is no record of it in the treatment notes. Likewise, Plaintiff's argument that the ALJ found fault with Dr. Fedoriw's 66 percent reaching assessment also fails. It appears to the Court that the ALJ included this as a simple notation to support an inconsistent medical record. This was not the sole example relied upon by the ALJ to find, as Plaintiff argues, Dr. Fedoriw's assessment "invalid." It was one of many citations to the medical record given by the ALJ that ultimately led to the ALJ assigning limited weight to Dr. Fedoriw's opinion—which was not a complete invalidation. It is also for this reason that the Court finds equally unpersuasive Plaintiff's argument that the ALJ's statement that the lack of an assistive device invalidated the doctor's findings. On the contrary, this was a particular observation made by Plaintiff's doctor which the ALJ seemed to find credible from the doctor's medical notes, not something to invalidate the doctor's findings. It also appears to the Court that this particular observation was stated in the ALJ's findings to contradict Plaintiff's subjective testimony about her need to use an assistive device and to also contradict Dr. Camarata's opinion, not

to negate Dr. Fedoriw's findings. The Court agrees with the ALJ's finding that Dr. Fedoriw's check-box form suggesting severe physical limitations was inconsistent with the actual medical records provided by Dr. Fedoriw. "We have held that the ALJ may 'permissibly reject []…check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (citations omitted). The ALJ provided numerous specific and legitimate citations based upon substantial evidence in the medical records to support her findings to give Dr. Fedoriw's opinion limited weight.

    2. Dr. David Camarata, M.D.

This treating physician also submitted a check-box medical source statement regarding Plaintiff's impairments. (R. at 949-51, 1255-57). As set out in the ALJ's discussion, the doctor opined that Plaintiff is limited to sitting two hours and standing-walking no more than two hours in an eight-hour workday; must be permitted to shift positions at will; could rarely lift up to 20 pounds; rarely climb stairs, no twisting, stooping, bending, crouching, squatting or climbing ladders. (R. at 976). Dr. Camarata also opined that Plaintiff required the use of an assistive device for ambulation and that the combination of her symptoms would interfere with her attention and concentration. (R. at 949-51, 1255-57). Dr. Camarata did not give any limitations regarding Plaintiff's ability to use her bilateral upper extremities because his treatment area was focused on Plaintiff's hips, but he did suggest that Plaintiff could tolerate moderate work-related stress and would be absent from work four or more days per month. (R. at 976-77).

The ALJ assigned limited weight to this opinion. Like Dr. Fedoriw's opinion, the ALJ found that Dr. Camarata's opinion from October 2016 is "unaccompanied by concurrent medical reasoning outlining the basis for the [Plaintiff's] alleged inability to sit for more than two hours total in an eight hour workday." (R. at 977). The ALJ also emphasized that given the previous remand from this Court regarding Dr. Camarata's opinion, the ALJ "very carefully" reviewed this doctor's opinion and still found that his opinions were "contradicted by his own medical treatment notes, which fail to reflect any

symptoms rising to such substantial or debilitating levels." (R. at 976-77). Plaintiff takes issue with the ALJ's statements that the doctor's assessments are unaccompanied by medical reasoning regarding Plaintiff's sitting prognosis and that treatment records fail to reflect symptoms of debilitating levels. (Doc. 16 at 17-18).

The ALJ did not err in rejecting Dr. Camarata's opinion finding it inconsistent with the medical evidence. Physical examinations by Dr. Camarata found Plaintiff had normal range of motion and stable balance, normal ambulation, reflexes, stance, sensation, range of motion and muscle strength. (R. at 977, 428-435, 495-534, 629-660, 1542-62, 1563-82). The ALJ noted that Dr. Camarata remarked occasionally upon the presence of a mild limp and decreased sensation of the Plaintiff's lower extremities and did not require an assistive device prior to Plaintiff's June 2015 right hip replacement. (R. at 977, 1545). After Plaintiff's hip replacement, notes from a July 2015 examination show that Plaintiff reported no hip joint pain or stiffness, no pain in the proximal thigh and no sensory disturbances. (R. at 507). There was also no swelling, no tenderness, no instability of the hips, normal motor strength, normal balance, gait and stance. (R. at 508). Further, in both December 2015 and February 2016 examinations, Dr. Camarata noted that Plaintiff showed "excellent range of motion of both hips." (R. at 503, 500). In August 2016, Dr. Camarata noted that Plaintiff walked unassisted with a slight limp. (R. at 497). These treatment notes would seem to support the ALJ's findings that they contradict this physician's check-box medical source opinion that Plaintiff could not sit or stand or walk for more than two hours a day, required an assistive device to walk, and would be absent from work more than four days per month. It would also appear that Plaintiff's condition improved with the prescribed course of treatment after having undergone two hip replacement surgeries.

Plaintiff further argues that the ALJ's comment regarding Plaintiff's attendance at "all of her regularly scheduled appointments without apparent issue, the undersigned finds the specific portions of Dr. Camarata's opinion regarding attention and concentration and absenteeism to be unsupported by any objective or subjective evidence of record" suggests that Dr. Camarata's assessment that Plaintiff would miss four days of work per month is

invalid. (Doc. 16 at 18-19, R. at 977). While the Court agrees that this particular comment by the ALJ may be misplaced, the Court finds this was harmless error for the ALJ to include this in her discussion as she gave limited weight to this opinion, and it would not change the outcome of the ALJ's disability findings. *See Molina*, 674 F.3d at 1115 (error is harmless when it is negligible to the nondisability determination). The ALJ did not rely upon this notion alone as her full statement also considered Plaintiff's reported daily activities to refute Dr. Camarata's concentration and absenteeism assessment. (R. at 977). An ALJ need not adopt wholesale any physician's opinion regarding a claimant's limitations. *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008).

Moreover, the ALJ also found the opinions of the above-referenced treating physicians inconsistent with Plaintiff's daily activities. (R. at 977). An ALJ may properly rely on evidence of a plaintiff's activities to discount a doctor's opinion about the plaintiff's ability to perform simple work. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Plaintiff's function report indicated that she could go grocery shopping once a week, cook dinner regularly, do the laundry and attend water therapy sessions twice a week. (R. at 237). Plaintiff also reported in January 2017 that she could do house chores, walk around the block, and walk up and down the steps in her home multiple times per day. (R. at 1642). There are also inconsistencies present between both Dr. Fedoriw's and Dr. Camarata's opinions on the use and need of an assistive device for Plaintiff, the amount of weight Plaintiff could lift, and the type of stress related work Plaintiff could undertake. Inconsistencies between treating physician opinions and claimant's daily activities are a specific and legitimate reason to discount treating physicians' opinions. *Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600-02 (9th Cir. 1999).

As a final argument, Plaintiff asserts that the ALJ relied upon "her own perceived medical expertise to determine [Plaintiff's] residual functional capacity." (Doc. 16 at 19). The Court does not agree. The Court does not find that the ALJ usurped the role of the medical doctors in this case and improperly substituted her own assessment. Ultimately, Plaintiff takes issue with the ALJ's interpretation of the evidence and asserts that Plaintiff's

interpretation of the evidence is a better alternative. But "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The ALJ acted rationally and well within the duties imparted upon her to determine the credibility of medical evidence, and she gave specific, legitimate reasons based upon substantial evidence for discrediting particular opinions. And, as the ALJ "is the final arbiter with respect to resolving ambiguities in the medical evidence," the Court will not disturb her findings.[1] *See Tommasetti*, 533 F.3d at 1041-42.

### B. The ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony.

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons to reject the Plaintiff's symptom testimony and the Court should, therefore, remand for an award of benefits. (Doc. 16 at 20-24).

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison*, 759 F.3d 995 at 1014. First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, absent evidence of

---

[1] This ruling distinguishes the previous ruling of this Court with regards to these two physicians. Dr. Camarata's opinion was originally excluded by the ALJ due to an inability to read the signature of a December 2016 medical source statement which the ALJ used as a bases to reject his opinion, but the previous Court found this was error by the ALJ. *Clark v. Comm'r of Soc. Sec.*, No. 18-CV-02787-PHX-SPL, 2020 WL 954952, at *3 (D. Ariz. Feb. 27, 2020). The ALJ in the present case did not raise this issue in her findings and it is an irrelevant factor in the present Court's ruling.

Likewise, Dr. Fedoriw's opinion was precluded for a lack of examination findings on two cited visits in 2016. The Court found the ALJ failed to explain the significance of those examinations, and the ALJ also failed to provide specific and legitimate reasons for giving Dr. Fedoriw's opinion little weight. *Id.* at *2. In the present case, the ALJ did not raise the 2016 examinations as an issue, and again, this Court finds it is irrelevant to the present Court's ruling. The Court has also established in the written order of the present case that the ALJ clearly put forth specific and legitimate reasons regarding Dr. Fedoriw's opinion that are discussed herein.

- 10 -

malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112. "The clear and convincing standard is the most demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015.

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings regarding the Plaintiff's credibility are insufficient. *Id*. "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "an ALJ [is not] required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1040). Additionally, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ's decision accounted for Plaintiff's physical impairments encompassing avascular necrosis of the bilateral hips, status core decompression of the bilateral hips and left femoral head and bilateral total hip replacement, lumbar degenerative disc disease, and obesity. (R. at 966). Plaintiff asserted that she was unable to stand or walk for short periods of time, prepare complex meals, perform household chores or any outside household tasks, drive or sleep normally. (R. at 971). Plaintiff testified to pain and tingling throughout her lower back and bilateral lower extremities that caused her to have to lay down or remain in a reclined position for multiple hours in a day. (R. at 971, 1001-02). Plaintiff further

testified that she could not stand for more than five to six minutes at a time, walk for more than ten minutes and required use of a walker, sit for more than ten minutes and lift more than five to eight pounds. (R. at 971, 1004-06). Plaintiff was questioned by the ALJ as to why her medical records notate that Plaintiff was able to walk without an assistive device, but Plaintiff did not provide a clear explanation for this inconsistency. (R. at 1010-11). Plaintiff also testified to side effects with her prescription medication which included problems concentrating and retaining information. (*Id.*)

The ALJ considered the level of Plaintiff's medical issues and found that, "…it is clear that the [Plaintiff] experienced pain and other symptoms associated with her hip and lower back impairments that affected her ability to perform a variety of activities. These symptoms were also likely exacerbated by the [Plaintiff's] weight." (R. at 974). However, the ALJ found the Plaintiff's "allegations of disabling limitations generally inconsistent with the available medical evidence of record," including her testimony regarding activities of daily living. (R. at 975). The ALJ then cited to specific examples in the record to support her findings.  Plaintiff, however, argues that the ALJ failed to provide a connection between the discussion of the medical evidence to a finding that the symptom testimony lacked credibility. (Doc. 16 at 21). The Court does not agree. It is apparent from the record as a whole that the ALJ used a multitude of specific reasons that are supported by substantial evidence to discount the Plaintiff's symptom testimony. The ALJ appropriately relied on medical evidence that did not corroborate the Plaintiff's allegations as only one reason to discount her testimony. Although this could not be the ALJ's sole consideration, it is a permissible one. *Burch*, 400 F.3d at 680.

With respect to Plaintiff's hip impairments, the ALJ went into an extensive medical summary in her findings addressing Plaintiff's hip issues from as early as July and October 2013 and the treatments Plaintiff underwent for pain with her hip impairments. (R. at 972). Plaintiff ultimately underwent a hip replacement in June 2015.  A July 2015 examination of Plaintiff showed she had grossly intact and improved muscle strength, balance, gait and stance, and Plaintiff denied any pain or stiffness. (R. at 972-73, 507-08). Despite

improvements and an overall stable condition that included no apparent changes in her overall musculoskeletal functioning upon follow-up examinations in February and August 2016, Plaintiff continued with a series of steroid injections in October 2015 and on four occasions throughout 2016. (R. at 973, 496-501). Treatment notes in August 2016 reiterated that Plaintiff was able to walk unassisted with only a slight limp. (R. at 973, 497). Plaintiff underwent a second, successful hip replacement in January 2017. (R. at 973, 1656-60). X-rays taken post-surgery revealed stable hips with anatomic alignment and no evidence of abnormalities. (R. at 973, 1605).

Plaintiff also alleged lower back pain due to lumbar degenerative disc disease during this timeframe. Plaintiff underwent an MRI in December 2015 which showed lordotic exaggeration and mild to moderate right foraminal stenosis and edema. (R. at 973, 521-22). Plaintiff was treated with a series of epidural injections in January, April and July 2016; however, the ALJ noted that throughout examinations in 2016, Plaintiff ambulated without limp and displayed grossly normal and stable findings of the lumbar spine and with no significant changes to the treatment regimen. (R. at 973, 536-62, 566-82, 1310-19). The treatment notes indicate Plaintiff only took part in steroid injections for this issue throughout 2019 and 2020 with no evidence of other overly invasive procedures introduced.[2] (R. at 973-74, 1486-1541, 1687-88, 1695-97). Thus, the ALJ found that treatment notes were unremarkable and reflect no more than routine treatment for pain and medication management. (R. at 974).

Based upon the number of examples cited from the medical evidence within the record, the ALJ found the Plaintiff's allegations of disabling limitations inconsistent with the medical evidence. (R. at 975). Although Plaintiff experienced improvements, the ALJ identified and considered all remaining allegations of Plaintiff's pain. Given those allegations, the ALJ specified a series of physical restrictions applicable to Plaintiff within a job setting when the ALJ made her findings of Plaintiff's RFC. The ALJ ultimately found that Plaintiff could return to her past relevant work and there were jobs available that could

---

[2] Plaintiff's date of last insured is December 31, 2018. Medical records showing treatments in 2019 and 2020 would fall outside the scope of Plaintiff's disability claim.

comply with Plaintiff's needed physical accommodations. The ALJ's conclusion that the objective medical evidence does not fully support Plaintiff's allegations is reasonable. *See Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009) (reiterating that the substantial evidence standard of review is highly deferential). Furthermore, the ALJ tied her discussion of the medical evidence regarding Plaintiff's physical issues to the limitations Plaintiff claimed from those impairments. The ALJ is not required to mechanically specify each allegation that every piece of medical evidence undermined. Grouping the medical evidence with the allegations they undermined was sufficient. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (restating that ALJs may explain their decisions with unideal clarity so long as their reasoning is reasonably discernible).

The ALJ also relied upon the successfulness of Plaintiff's surgeries and the effectiveness of the treatment plans for Plaintiff's impairments. The ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040; *see* 20 C.F.R. § 404.1529(c)(3). "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). As discussed above, the ALJ has provided multiple examples of Plaintiff's improvement with treatment and surgery. The ALJ specifically discussed in her findings that subsequent examinations of Plaintiff's hips after surgery and her lumbar spine have revealed a stable overall appearance without any evidence of further progression of any impairments or significant changes to Plaintiff's present diagnosis. (R. at 975, 1330-31, 1605, 1725-26). The ALJ also noted that Plaintiff's surgeries were successful resulting in stable range of motion, gait, and ambulation during most of her in-person examinations throughout 2017, 2018 and 2019. (*Id.*) Based upon the medical evidence, Plaintiff exhibited improvement with her prescribed treatment plans.

In consideration of Plaintiff's daily living activities, the ALJ acknowledged in her decision that Plaintiff retained the ability to perform a sedentary range of exertional activity. (R. at 975). The ALJ cited that Plaintiff could perform chores that included preparing meals, driving, and shopping in stores, sitting and watching television for

extended periods, and caring for her own personal hygiene unassisted. (*Id.*) Plaintiff also reported in her function report that she could go grocery shopping, cook dinner, wash laundry and drive. (R. at 237). Plaintiff also stated during an examination in January 2017 that she could do chores around the house and walk around the block. (R. at 1642). Plaintiff also stated that she had stairs in her home and was able to walk up and down these stairs multiple times during the day. (*Id.*) "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Molina*, 674 F.3d at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine*, 574 F.3d at 694. Plaintiff also testified that she required the use of an assistive device for walking; however, the medical records show this is contradictory to the treatment notes discussed herein that indicate no assistive device was used by Plaintiff, outside of recovery periods post-surgery for her hips. (R. at 974-75, 333, 405-06, 500). Thus, the ALJ's finding that Plaintiff was not as limited as she alleged was reasonable. If an ALJ's decision is made "with less than ideal clarity, a reviewing court will not upset the decision on that account if [her] path may reasonably be discerned." *Alaska Dept. of Edvtl. Conservation v. E.P.A.,* 540 U.S. 461, 497 (2004); *See Brown-Hunter*, 806 F.3d at 492 (applying this standard to social security). Given the scope of the record, the ALJ properly relied upon objective medical evidence to find the Plaintiff's allegations were inconsistent with the record, the effectiveness of Plaintiff's treatments for her impairments, and Plaintiff's daily activities to discount Plaintiff's symptom testimony. There is sufficient evidence present to enable this Court to reasonably discern the ALJ's path to conclude that her decision is supported by substantial evidence. As stated previously, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954.  Therefore, the Court finds the ALJ did not err in rejecting Plaintiff's pain and symptom testimony. The ALJ provided specific, clear and convincing reasons for

rejecting Plaintiff's claims and those reasons were supported by substantial evidence.[3]

## IV. CONCLUSION

The Court finds that substantial evidence supports the ALJ's nondisability determination. The ALJ evaluated the medical opinion evidence appropriately by providing specific and legitimate reasons to support her findings. Further, the ALJ properly discounted Plaintiff's symptom testimony by providing specific, clear, and convincing reasons for her conclusion. Therefore, the Court finds that the ALJ did not err in her decision, which is based upon substantial evidence. The Court need not reach the merits of Plaintiff's request to remand or for an award of benefits since the Court finds a remand is unwarranted.

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and dismiss this action.

Dated this 29th day of December, 2022.

*Honorable Susan M. Brnovich*
United States District Judge

---

[3] The previous Court found the ALJ's reliance on Plaintiff's daily living activities to be an insufficient reason to reject Plaintiff's symptom testimony because the record did not show Plaintiff spent a substantial part of her day engaged in functions transferable to the workplace. *Clark*, 2020 WL 954952 at *3-4. As this Court's present Order discusses, this is distinguished by the findings of this Court. The Court finds that the ALJ presented specific, clear and convincing reasons to discount the Plaintiff's symptom testimony based not only on Plaintiff's engagement with daily activities that are contradictory to claims of total disability, but also upon alleged limitations inconsistent with the medical evidence, and the effectiveness of Plaintiff's treatments of her impairments.